IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

DATATEL, INC.,                          )
                                        )
          Plaintiff,                    )
v.                                      )     CIVIL ACTION NO. 05-495
                                        )
ROSE & TUCK, LLC,                       )
                                        )
          Defendant.                    )


## <u>MEMORANDUM ORDER</u>

THIS MATTER is before the Court on Defendant's Motion to Dissolve Preliminary Injunction.  This case involves a claim by Datatel, Inc, a software developer against Rose and Tuck, LLC, a computer software training company.  Datatel, Inc. contends that Rose and Tuck, LLC, has taken confidential trade secrets contained in the Datatel software documentation and training materials and that Rose and Tuck, LLC, is using them to service contracts with the North Carolina Community College System. Datatel, Inc. contends that Rose & Tuck, LLC, has built a bid on a contract on the promise of sharing confidential information without a license or authority from Datatel, Inc.  Datatel, Inc. seeks to enjoin Rose & Tuck, LLC's actions.  The Court has previously heard the Datatel, Inc. Motion for Preliminary Injunction and granted the motion and entered an injunction against Rose and Tuck, LLC.  Now Rose and Tuck, LLC, is before the Court contending that the injunction was improvidently entered without notice to Rose and Tuck, LLC, without personal

jurisdiction over Rose and Tuck, LLC, that the injunction is overbroad, and moves the Court to dissolve the injunction.  Rose and Tuck, LLC's ("Defendant") Motion to Dissolve Preliminary Injunction presents four issues.

(1) Whether the Court has proper jurisdiction over Rose & Tuck ("Defendant," "R&T").

(2) Whether R&T received proper notice of the motion for preliminary injunction.

(3) Whether the preliminary injunction is improperly overbroad.

(4) Whether upon reconsideration of the test for an injunction Plaintiff meets the burden to secure an injunction.

The Court denies Defendant R&T's Motion to Dissolve Preliminary Injunction for four reasons.  First, this Court has jurisdiction over R&T because R&T satisfies the minimum contacts standard according to the Virginia long-arm statute and Datatel will sustain the injury from R&T's actions in Virginia. Additionally, R&T has purposely availed itself of Virginia by entering into three successive contracts with Datatel, Inc. from 1999-2001 to attend annual Datatel conferences as a client sponsoree, R&T entered into three successive contracts from 2002-2004 to act as an exhibitor at annual Datatel conferences, and R&T has contracted with two Virginia-based entities.  Thus, R&T reasonably could have anticipated being haled into a Virginia court.

Second, R&T received notice of the hearing on the Motion for

2

Preliminary Injunction five days before the hearing at their place of business.  The delay in receiving the actual notice was caused by R&T failing to employ a reliable mail drop or forwarding service.  R&T uses a mail drop as its principal office address and R&T alleges it took four days to receive the copy of the notice of the motion.  Additionally, Plaintiff served R&T's registered agent three days before the hearing.

Third, the preliminary injunction is not improperly overbroad.  The Court affirms the preliminary injunction because it is narrowly tailored to limit the scope only to prevent R&T's misappropriation of Datatel's copyrighted material and trade secrets and does not prevent R&T from engaging in business.

Fourth, the balance of harms for denying the injunction does not tip in R&T's favor.  The Court affirms the preliminary injunction against R&T because Datatel will suffer irreparable injury, the loss of confidential trade secrets without the injunction.  The plaintiff satisfies its burden of establishing the *Blackwelder* factors supporting the grant of injunction.

## I. BACKGROUND

This case is before the Court on Defendant's Motion to Dissolve the Preliminary Injunction.  Plaintiff Datatel brought this suit against Defendant R&T alleging (1) infringement of Datatel's federally registered copyrights in its proprietary software training materials violating 17 U.S.C. § 501; (2) misappropriation of trade secrets in violation of the Virginia

Uniform Trade Secrets Act, VA. CODE § 59.1-336 *et seq*; (3) tortious interference with contractual relations; and (4) inducing breach of contract.  Plaintiff filed the Complaint on May 2, 2005.  Plaintiff's motion for a preliminary injunction against Defendant R&T was heard by this Court on May 13, 2005. After Plaintiff Datatel affirmed to the Court that the defendant received notice of the motion hearing, the Court granted Plaintiff's Motion for a Preliminary Injunction.

Defendant R&T alleges that Datatel failed to provide actual notice of the Motion for a Preliminary Injunction resulting in R&T's failure to appear at the motion hearing on May 13, 2005. On May 17, 2005, R&T moved to dissolve the preliminary injunction.  The Court heard arguments from Plaintiff and Defendant on May 27, 2005 and delivered an amended order upholding the preliminary injunction on May 31, 2005.

## II. DISCUSSION

### A.   Standard of Review

#### 1.   Dissolve an Injunction

In determining whether to dissolve a motion for preliminary injunction, the Court must apply the four part test from *Blackwelder Furniture Co. v. Seilig Mfg. Co.,* 550 F.2d 189, 193-96 (4th Cir. 1977); *see also Manning v. Hunt,* 119 F.3d 254, 263 (4th Cir. 1997);  *Microstrategy Inc. v. Motorola, Inc.,* 245 F.3d 335, 339 (4th Cir. 2001).  The four part test considers (1) the

4

likelihood of irreparable harm to the plaintiff without the preliminary injunction; (2) the likelihood of harm to the defendant if the injunctive relief is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest. *Id.* The Fourth Circuit recognizes that in a *Blackwelder* analysis, "harm to both parties is the most important consideration" and the plaintiff bears the burden of establishing each of the *Blackwelder* factors. *Physicians Interactive v. Lathnian Systems Inc.,* 2003 WL 23018270 1981, 1984 (E.D.Va. 2003). If the probable irreparable harm to the plaintiff without the injunction greatly outweighs the anticipated harm to the defendant if the injunction is granted, "it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success." *Blackwelder*, 550 F.2d at 196.

## 2. **Personal Jurisdiction**

Under Federal Rule of Civil Procedure 12(b)(2), the Court may dismiss a case for lack of personal jurisdiction. Plaintiff bears the burden of proof to show that grounds for personal jurisdiction exist by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). When a court makes a ruling on personal jurisdiction without holding an evidentiary hearing, the plaintiff must make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge. *Id.; see also Pearson v. White Ski Company*, 228

F.Supp.2d 705, 707 (E.D.Va. 2002).  In such circumstances, a court must view all relevant allegations in the light most favorable to the plaintiff and draw all reasonable inferences for the existence of jurisdiction.  *Combs*, 886 F.2d at 676; *see also Mylan Labs v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993).

Determining whether a person is subject to personal jurisdiction requires a two step analysis under Virginia law; a court must conclude (1) that jurisdiction is authorized by the state's long-arm statute, VA. CODE. ANN. § 8.01-328.1 (Michie 2004), and (2) that an exercise of personal jurisdiction is consistent with the requirements of the Due Process Clause of the Fifth Amendment of the United States Constitution.  *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004) (citations omitted).  In other words, the defendant must have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Both requirements are linked in that Virginia's long-arm statute extends personal jurisdiction to the constitutionally permissible limits of the Due Process Clause of the Fifth Amendment.  *Village Lane Rentals, LLC v. Capital Financial Group*, 159 F.Supp.2d 910, 914 (W.D.Va. 2001) (citation omitted).

B.   **Analysis**

A.   **Personal Jurisdiction**

The Court upholds the preliminary junction against R&T because R&T's conduct falls within reach of Virginia's long-arm statute and exercise of personal jurisdiction does not offend due process.  R&T has purposely availed itself of Virginia by engaging in contracts with Datatel and by committing a tort outside Virginia that will cause injury inside Virginia.

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's: (1) transacting any business in this Commonwealth; (2) contracting to supply services or things in this Commonwealth; (3) causing tortious injury by an act or omission in this Commonwealth; (4) causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth.

VA. CODE § 8.01- 328.1.  The exercise of personal jurisdiction over R&T is proper in Virginia because the facts of this case fall within Section A (4) of the long-arm statute.  Datatel alleges that Defendant caused tortious injury by the act of misappropriating trade secrets in Virginia.  Datatel further satisfies the Virginia long arm statute because R&T has maintained continuous business contacts in Virginia.  R&T entered into three (3) successive contracts from 1999-2001 to attend annual Datatel conferences as a client sponsoree, as well as

three (3) successive contracts from 2002-2004 for R&T to act as an exhibitor at annual Datatel conferences.  R&T alleges to have entered into other confidentiality agreements with Datatel or Datatel's clients which would further satisfy the minimum contacts test.

Defendant R&T contends that its contracts with two Virginia customers does not satisfy minimum contacts.  The United States Supreme Court held in *Helicopteros v. Hall* that a foreign business sending personnel to a state for training in connection with regular purchases of helicopters in Texas did not constitute sufficient continuous contacts for an exercise of personal jurisdiction over the foreign business.  466 U.S. 408, 418 (1984).  Similarly, the Fourth Circuit held in *Nichols v. Searle & Company* that a company entering into a one-time contract with a Maryland firm, holding two meetings in Maryland, and making less than one percent of its total purchases in the state of Maryland did not constitute sufficient continuous contacts for an exercise of personal jurisdiction over the foreign business.  991 F.2d 1195, 1200 (4th Cir. 1993).

In this case, however, R&T entered into five separate annual agreements with Datatel, a Virginia company, from 1999-2004 to participate in Datatel conferences as client sponsorees and exhibitors, entered into the 1999 consulting contract with Datatel, and entered into a 1999 contract with Roanoke College, another Virginia entity.  Whereas the Court in *Helicopteros*

8

recognized that the company "had never been licensed to do business in the state," R&T signed a business contract with Datatel in 1999 and agreed to participate in annual Datatel conferences from 1999-2004.  *See* 466 U.S. at 416.  In contrast, the Court recognized in *Superfos Investments Limited v. Firstmiss Fertilizer, Inc.* that "it was a single contract with performance over a 2 ½ year period rather than a series of transactions." 774 F.Supp. 393, 398 (E.D.Va. 1991).  Here, R&T engaged in a series of transactions including its contracts with two Virginia entities and six years of agreements to participate in annual Datatel conferences.  R&T's business model is even based, in part, upon providing training to entities using Datatel's software. This series of transactions between Datatel and R&T provides further evidence that the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). Additionally, there can be no doubt that R&T's misappropriation of Datatel's trade secrets will cause Datatel injury in Virginia by causing a tort to occur in Virginia.  Va. Code § 8.01-328.1(A)4.  In light of the *Combs* presumption favoring the plaintiff, the Court has personal jurisdiction over the Defendant under the Virginia long arm statute.  Va. Code § 8.01- 328.1. Due to the nature of R&T's contacts with Virginia, the Court finds that R&T may fairly be subjected to Virginia jurisdiction.

In addition, this Court properly exercises jurisdiction over Defendant because R&T's contacts also satisfy the second prong of the jurisdiction test: exercise of jurisdiction does not violate due process.  Personal jurisdiction requires that Defendant's contacts with the state must be such that the exercise of jurisdiction over them "does not offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316.  Defendant's course of conduct of dealing with a Virginia company, contracting to attend conferences, contracting to exhibit at conferences, contract with Roanoke College, and its manner of conducting its training business based upon Datatel's Virginia software products satisfies due process, because under the circumstances R&T reasonably could have anticipated being haled into court in Virginia.  *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1945).  From the nature of Defendant's ongoing business relationships with Virginia-based entities, it was foreseeable and can reasonably be anticipated that Defendant could be sued in Virginia.  Therefore, notions of due process are not offended by the exercise of jurisdiction over Defendant.

In addition to personal jurisdiction, the Court has jurisdiction over Defendant because the claim relating to R&T's infringement of Datatel's federal copyright registrations presents a federal question.  28 U.S.C. §§ 1331 and 1338(a).  The Court also has subject matter jurisdiction because the parties

10

are citizens of different states and the amount in controversy
exceeds $75,000.  28 U.S.C. § 1332.

###    B.    Notice of Hearing on Plaintiff's Motion for Preliminary Injunction was Proper

The Court affirms the preliminary injunction because R&T
received notice of the hearing five days before the hearing at
their place of business.  R&T uses a mail drop as its principal
office address and R&T alleges it took four days to receive the
copy of the motion.  Additionally, Plaintiff served R&T's
registered agent three days before the hearing.  Datatel has
provided FedEx receipts confirming the timely delivery of the
motion. The amount of time necessary to mail the Motion for
Preliminary Injunction from the R&T mail drop and the registered
agent to R&T employees is irrelevant.  Datatel does not bear the
burden to ensure that R&T's registered agent expeditiously
transfers the documents to the appropriate person.  The Court
finds that Datatel sufficiently served R&T's registered agent and
this service satisfies its notice requirement.

###    C.    The Injunction is Not Improperly Overbroad

R&T contends that the injunction is improperly overbroad
because it covers confidential materials to which R&T already has
access and authorization to use.  Datatel agrees that such
authorized use is not subject to the injunction, thereby limiting
the scope of the injunction.  Although Defendant argues that the
injunction seeks to prevent R&T from performing services for any

11

client that uses Datatel software, the injunction is narrowly
tailored to encompass only R&T's access to "Datatel Proprietary
Materials" for which Datatel has not approved R&T to use.
However, materials which R&T uses because of contractual
provisions permitting the limited and protected access and use
for the benefit of a Datatel customer are not subject to the
Court Order.  Furthermore, the Court Order has been amended to
protect Datatel's copyrighted materials and trade secrets.

### D.   The Preliminary Injunction Must Be Affirmed

### 1.   Blackwelder factors

*a.   Likelihood of Irreparable Harm to Plaintiff
without the Preliminary Injunction*

The Court affirms its Order granting Datatel's motion for
preliminary injunction because "the balance of hardship" remains
in favor of Datatel because of the four part test.  *Blackwelder*,
550 F.2d at 193-96.  The four part test considers (1) the
likelihood of irreparable harm to the plaintiff without the
preliminary injunction; (2) the likelihood of harm to the
defendant if the injunctive relief is granted; (3) the likelihood
that the plaintiff will succeed on the merits; and (4) the public
interest.  *Blackwelder*, 550 F.2d at 193-196.  If the probable
irreparable harm to the plaintiff without the injunction greatly
outweighs the anticipated harm to the defendant if the injunction
is granted, "it is enough that grave or serious questions are

presented; and plaintiff need not show a likelihood of success." *Id.* at 196.

The plaintiff bears the burden to show irreparable harm it will suffer if the court denies the injunction. *Dan River, Inc. v. Icahn,* 701 F.2d 278, 284 (4th Cir. 1983). Plaintiff has shown that without the injunction, Datatel will continue to face irreparable injury from R&T's misappropriation of Datatel's trade secrets. Plaintiff lacks control over R&T's use and interpretation of Datatel's materials, and R&T will likely associate Datatel's software and related materials with future R&T training services. The inability to calculate the damages caused by R&T's future misappropriation constitutes irreparable injury that can only be cured by injunctive relief.

      b.  *Likelihood of Harm to Defendant if the Injunctive Relief is Granted*

R&T asserts that denial of the injunction will cause no harm to Datatel. Defendant argues that Datatel knew about R&T's use of the material and gave their approval because of R&T's presence as an exhibitor at Datatel's conference. R&T fails to prove that attendance at the conference constitutes Datatel's approval for R&T to use the confidential information. In fact, the 1999 contract between Datatel and R&T (Exhibit 1) was the only time during which R&T served as a "subcontractor" to Datatel. The contract was a short-term agreement for the limited purpose of providing continuity to two Datatel clients

to which Mr. Dieghan (a former Datatel employee subsequently hired by R&T) provided consulting services before his termination.  R&T fails to demonstrate that Datatel will not suffer irreparable harm without the injunction.

*Blackwelder* requires the Court to weigh the probability of irreparable injury to the plaintiff and the probability of irreparable injury to the defendant.  *Blackwelder*, 550 F.2d at 195.  Defendant contends that R&T will essentially be put out of business without an injunction. In weighing the harm R&T might suffer from the injunction, the Court recognized "that R&T will suffer no legally cognizable harm from being ordered to respect Datatel's rights in its copyrighted works and trade secrets and to refrain from inducing Datatel's customer, NCCCS, to breach its obligations of confidentiality."  Order at 1.  The narrow scope of the Order limits the injunction only to Datatel trade secrets and copyrighted material for which R&T has not been granted access.   The Defendant fails to demonstrate how the injunction will cause the company financial ruin.

> c.   *The Likelihood that Plaintiff will Succeed on the Merits*

> 1.   Trade Secrets Claim

The Court affirms Plaintiff Datatel's claim for injunction under the Virginia Uniform Trade Secrets Act because Plaintiff is likely to succeed on the Virginia Trade Secrets claim.  VA. CODE § 59.1-336.  To prevail on a VUTSA claim, Plaintiff needs to

14

prove that (1) the defendant acquired or disclosed "a trade secret" and (2) the "trade secret" was misappropriated. *Physicians Interactive,* 2003 WL 23018270 at 1987; *Newport News Indus. V. Dynamic Test'g, Inc.,* 130 F. Supp.2d 745, 750-751 (E.D.Va. 2001). The Virginia Uniform Trade Secrets Act, VA. CODE § 59.1-336 defines a trade secret as:

> Information, including, but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that: 1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and 2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

> VA. CODE § 59.1-336 defines misappropriation as:

> 1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or 2) Disclosure or use of a trade secret of another without express or implied consent by a person who a) Used improper means to acquire knowledge of the trade secret; or b) At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was (1) Derived from or through a person who had utilized improper means to acquire it; [or] (2) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; [or] (3) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or (4) Acquired by accident or mistake.

To demonstrate the existence of a trade secret, Datatel must demonstrate "that the information derives economic value from the secrecy and that it was subject to reasonable attempts to maintain it as a secret." *Physicians Interactive,* 2003 WL 23018270 at 1987; *See Fordham v. Onesoft, Corp.,* 2001 U.S. Dist.

LEXIS 22918, *13 (E.D.Va. 2001).  Datatel's proprietary
information, including software and software documentation,
resides in Virginia.  Datatel's information provided to NCCCS
under the 2000 NCCCS Contract and the software sublicense
constitute trade secrets because Datatel has taken reasonable
measures to safeguard the information and competitors would
economically benefit from receiving this proprietary
information.  *Id.* at 1988; *Newport News Indus.,* 130 F. Supp.2d
at 750-751.  R&T's alleged acquisition of Datatel trade secrets
through improper means constitutes the definition of
misappropriation because R&T's alleged access to the information
was obtained without consent or authorization.  These improper
means allegedly included R&T's bid inducing NCCCS to breach its
obligations of confidentiality and then using Datatel's trade
secrets without Datatel's consent.

Defendant R&T argues that R&T never received the protected
materials from NCCCS and that they could not have
misappropriated the trade secrets without access to the
materials.  However, R&T's bid states that it will "supplement
[NCCCS's] Datatel [technical documentation and learning guides]
with our own documentation" and that "[a]ll of our partners and
staff are former Datatel clients, former Datatel employees, or
both."  Exhibit 4 at p. 7, 9.  From its prior contact with
Datatel, R&T knew that Datatel clients and employees are bound
by obligations of confidentiality and Datatel's practice of

maintaining its software and software documentation as trade secrets. R&T would not have been able to prepare its own "supplementation" documentation to accompany "the Datatel-supplied" technical documentation and learning guides without information obtained from an employee or licensee of Datatel. However, Datatel only provided this type of information to Datatel employees and licensees under obligations of confidentiality.

Defendant R&T argues its means were not improper because numerous confidentiality agreements have existed between R&T in which Datatel approved of R&T's receipt of confidential training information.  R&T fails to provide evidence demonstrating such approval or consent.  According to the affidavit of Jayne Edge, only one confidentiality agreement was signed between R&T and Datatel in 1999 which was a short-term agreement for the limited purpose of providing continuity to two Datatel clients to which Mr. Dieghan (a Datatel employee hired away by R&T) provided consulting services before his termination.  This 1999 contract between Datatel and R&T was the only time during which R&T served as a "subcontractor" to Datatel.  Exhibit 1.

The damages resulting from R&T's alleged misappropriation of Datatel's trade secrets, the injury sustained by Datatel is difficult to calculate with precision.  If Datatel's trade secrets are disclosed, divulged, or disseminated to third parties, Datatel would face a continual loss of its intellectual

17

property.  The Court finds that the preliminary injunction is the only remedy available to prevent future misappropriation of Datatel's trade secrets and loss of confidentiality.

Defendant further contends that Datatel's trade secret claim fails because the Virginia Uniform Trade Secrets Act is not applicable because torts are governed by the law of the place of wrong, even if injury is sustained in Virginia.  *X-IT Products, L.L.C. v. Walter Kidde Portable Equipment, Inc.,* 155 F.Supp.2d 577, 640 (E.D.Va. 2001).  In *X-IT Products*, the Court held that Virginia law did not apply to the trade secrets claim because none of the wrongs occurred in Virginia.  155 F.Supp.2d at 640 (E.D.Va. 2001).  In contrast, R&T employees obtained access to Datatel trade secrets while employed by Datatel, which is located in Virginia.  These employees signed confidentiality agreements with Datatel upon termination of their employment. The Court upholds Datatel's trade secrets claim because the misappropriation of trade secrets arises in part from breach of such confidentiality agreements, thereby falling within the jurisdiction of the Virginia Uniform Trade Secrets Act.

## 2.  Copyright Registration

Datatel is likely to succeed on the Copyright Act claim because Datatel owns a copyright to the software program and software documentation.  Datatel has made a preliminary showing that R&T has copied or claims it can copy Datatel's software documentation and training materials.  These Datatel works are

18

subject to a copyright and Datatel may prevail on this claim as well. Additionally, Datatel has standing to raise copyright claims even if Datatel has not yet received certificate of registration from the Copyright Office. As stated in 17 U.S.C.A. § 408(a), "the owner of copyright or of any exclusive right in the work may obtain registration of the copyright claim by delivering to the Copyright Office the deposit specified by this section, together with the application and fee." Such registration is not a condition of copyright protection. 17 U.S.C.A. § 408. Additionally, 17 U.S.C.A. § 410(d) states that "the effective date of a copyright registration is the day on which an application, deposit, and fee, which are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for registration, have all been received in the Copyright Office."

Division exists, however, among federal courts as to whether a copyright plaintiff must await the issuance of a certificate of registration before filing suit. This Court, applying a Fifth Circuit case, has held that showing a plaintiff filed a copyright application and paid the filing fee is sufficient for filing copyright suit for infringement. *Secure Services Technology, Inc. v. Time and Space Processing, Inc.*, 722 F. Supp. 1354, 1363-1364 (E.D.Va. 1989) (J.Ellis) (citing *Apple Barrel Productions, Inc. v. Beard*, 730 F.2d 384 (5th Cir. 1984)); *see also Eltra Corporation v. Ringer,* 579 F.2d 294, 296 n.4 (4th Cir. 1978)

(securing registration is not required in order to file an infringement suit).  17 U.S.C.A. § 408(a).  The Court has presumed that copyright registration occurs as soon as the owner of the copyrightable material delivers the application and filing fee to the Copyright Office.  *Id.*

The defendant argues that the plaintiff must have a registered copyright because the 1976 Copyright Act § 411 states that "no action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title."  However, § 411 further provides that where the deposit, application, and fee required for registration are delivered to the Copyright Office and registration is denied, the applicant can still institute an infringement action by serving notice and a copy of the complaint to the Register of Copyrights.  17 U.S.C. § 411.  This statutory language further suggests that failure to obtain copyright registration does not bar an applicant from instituting a copyright infringement action.

Defendant argues that *Mays & Associates v. Euler* should persuade the Court to deny Plaintiff standing to raise the copyright claim.  2005 WL 1172326, 6-7 (D.Md. 2005).  In *Mays*, the Court interpreted 17 U.S.C. § 411 as Congress' intent "to require something more than application for a copyright prior to filing suit."  *Id.* at 6.  However, this Court rejects the *Mays* interpretation.  The Court adopts the interpretation in *Secure*

20

*Servs. Tech* that if a company is forced to wait for copyright registration before filing suit, "the owner of a copyright would be left in legal limbo while the Copyright Office considers whether he qualifies for a certificate of registration."  722 F. Supp. at 1364.   Additionally, the Court has expressed concern that the period of processing a copyright application "could be a lengthy one, during which time an infringing use may continue unchallenged if the owner is not allowed to begin the suit." *Iconbazaar, L.L.C., v. America Online, Inc.*, 308 F.Supp.2d 630, 634 (M.D.N.C. 2004). Therefore, the Court recognizes that Plaintiff has standing to raise the copyright claim even though Plaintiff has only filed application for copyright registration.

### 3.   Statute of Limitations

The Court affirms the preliminary injunction because Datatel's claim satisfies the statute of limitations requirement. According to 17 U.S.C. § 507 (b), the Copyright Act requires that actions must be filed within three years after the claim accrued. Similarly, the Virginia Uniform Trade Secrets Act has a three year statute of limitations during which a plaintiff must file action.  VA. CODE § 59.1-340.  Datatel's suit satisfies the three year statute of limitations requirement because its case rests on R&T's January 17, 2005 Bid (Exhibit 4) which advertises R&T's "extensive experience...working with Datatel products and tools." Although R&T claims that Datatel's case falls outside the statute of limitations because the 1999 contract was more than three years ago, the misappropriation of trade secrets did not occur

until January 17, 2005. The Court may affirm the preliminary injunction because Datatel filed the suit on May 2, 2005, clearly within the three year statute of limitations requirement.

> d. *The Public Interest*

Finally, the public interest illustrated in the Copyright Act and the Virginia Uniform Trade Secrets Act favors upholding the preliminary injunction. The Court has an obligation to enjoin any company from continuing to misappropriate proprietary information and trade secrets. *Physicians Interactive,* 2003 WL 23018270 at 1989.

### III. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendant's Motion to Dissolve Preliminary Injunction is DENIED.

The Clerk is directed to forward a copy of this Order to counsel of record.

ENTERED this __17th_____ day of June, 2005.

_____/s/_____
Gerald Bruce Lee
United States District Judge

Alexandria, Virginia
06/17/05